Next case on the calendar is Chandra v. Lewis You know, because of the nature of this argument, I'm going to do something unusual and disclose to you the fact that the person arguing for the government is a former law clerk of mine. Now, that often happens, but I don't want you, at some point, to figure that out and think that I was hiding it. I'm not. Your Honor, I have no problem with that. That's perfectly reasonable. Thank you. All right. Mr. Fazio, you have two minutes reserved for rebuttal whenever you're ready. May it please the Court. My name is John Fazio of Fazio Law Offices, representing the plaintiff appellant, Rahul Manchanda, and his wife, Sylvia Madej Manchanda. Your Honor, the facts of this case are both stark and they are jarring. Mr. Manchanda is a 20-year-long immigration attorney who's practiced in New York before the very same immigration officers, Ms. Lewis and Ms. Quintana. Who were in charge of the adjustment of status interview that's at issue here in this case. When Mr. Manchanda sponsored the application of his wife, Sylvia, to get a green card and naturalized through the adjustment status process, he was assigned to individuals with whom he had previously been an adversary as a lawyer and been moving other applications of other people who were seeking the same treatment through the immigration context. On February 13, 2020, Mr. Manchanda and his family came, his wife and their son, Gabriel, down to the DHS office in New York, and they waited for a little over three hours and were the last ones called. During that time, while they were waiting, various personnel at the immigration office were walking around and making comments, humiliating comments, derogatory comments toward them, and indicating that they were going to have their application denied because Mr. Manchanda was apparently not liked by some of the people in that office. I don't want to cut you off, Mr. Fazio, but the district court didn't say, I understand the allegations, but the district court didn't say that your client doesn't get access to basically said for purposes of the FTCA and the APA that it was too early. So I understand why your client wants to bring claims, but it was just too early. Why don't you address that? The fact is there was no some certain in the February 13 claim. I think you would understand that's what's required under the FTCA, right? I'll address that. I can address that first and then go back to your earlier question about being too early. Yeah. The question is, we understand what the facts are. We read the briefs. We know what is alleged and taken as true, which we must at this stage. These are very disturbing. So we know that. The questions for us, I believe, are has a claim been stated under either the Federal Tort Claims Act or the Administrative Procedure Act, right? Absolutely. So why don't you address whichever one first you want, but address those issues. On the facts, I just want to point out the timing of this was February 13th, he makes a complaint after they leave and these actions occur. And then the following day, he sat down for the Stokes hearing. And that short time frame between the interview and the… Right, but this is not a statute of limitations issue, right? This is a question of are the prerequisites for a claim under the Federal Tort Claims Act and the Administrative Procedure Act satisfied? And the issue with respect to the Tort Claims Act, obviously, is there has to first be a presentment to the agency and at least the government argues that requires a demand for a sum certain of damages. The argument with respect to the APA is that the APA only permits review of final agency actions and the government argues this isn't. So you've got to persuade us in the time remaining or in your brief that you've already submitted that the government is wrong about one or the other or both of those issues. I think they're wrong about both, Your Honor, and I will address those. Under the FTCA Section 2675A, the statute that waives sovereign immunity, the government has argued that not providing a sum certain and in their argument not making a claim for monetary damages dooms this to – because there's not jurisdiction to hear the claim. And I understand their argument. If you look at the case that they cite to, Romulus v. U.S., 160 F. 3rd, 151, it talks about the reasons why this requirement exists and when it would be relaxed. It says it's worth noting that in a personal injury context, the government would be deprived of the ability to evaluate the claim and then to make an appropriate decision about whether to offer some kind of settlement. This was a case where someone was rear-ended by a USPS driver and they submitted initially medical bills, the traditional things that you would in a personal injury action to prove your damages claim, but questions were asked by the government and they didn't provide the exact quantum of lost wages, the exact quantum to compensate them for personal injury, leaving the government unable under 28 CFR – Right, I understand what Romulus says. The question is, so what is wrong with the district court's holding that a sum certain is required? After all, that's what the regulations provide as the definition of presentment. And if you look at 2675D, it says that an action shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency. It seems to me if you ask for zero, you can't submit a claim for anything more than zero. And that would seem to support the legitimacy of the regulation that says you have to do presentment with a demand for damages. If it's not a damages case, it's not an FTCA case. Your Honor, there was a presentment for demand for monetary damages. We addressed it in our reply where he asked for… But that's after the lawsuit was filed. After the lawsuit was filed, the form was put in with an amount, I forget what it was, $10 million or something. But the Supreme Court said in McNeil, in that situation, you have to go back and refile the lawsuit that if you file it prematurely, you don't just get to continue. If you rectify it, you have to, the district court properly dismissed it without prejudice and presumably you could refile it, right? Well, Your Honor, this is a different type of a case. This is not a personal injury case. My client is about to have his family… There's no limitation in the regulation to only personal injury cases. As Judge Lynch pointed out, there's a lot of reasons independent of a personal injury case why the government would be entitled to notice as to the amount of damages being sought. I understand that, Your Honor. There's no case in America, any circuit that has ever… I didn't see it in the brief, where they have waived the some certain requirement because it wasn't a personal injury situation. Do you have such a case? I have a case that I found yesterday on that note in the Fourth Circuit. Which case was that? I don't have it in front of me, Judge, because we hadn't cited it in our brief so I didn't think it was appropriate to bring it up. But there have been circuit courts that have looked at that and said, we look at this leniently in the sense that as long as there's been notice to the government of what the claim is and they're in a position that they can offer redress… On the some certain issue? I understand maybe on other components of the claim and the nature of the claim. But on the some certain issue itself? That's not part of the actual statute that's in their regulations interpreting it. And in that particular case, they didn't address 14.2A as a bar to the district court reviewing this Federal Court Claims Act, which like this one was… Are you most of the time why this is a final… Why you think there was a final decision? Yes, Your Honor. We briefed it extensively, but under the Administrative Procedures Act, abuse of process is one of the things that you can bring up and what is brought up here. And setting somebody up for a Stokes hearing, which happens in two out of 10,000 applications, many more than the number of applications which are denied, when it involves somebody who practices in this area as a lawyer and immigration attorney… But wait, when you have a Stokes hearing, what is the percentage of cases in which there is a denial after the Stokes hearing? There still could be a grant after the Stokes hearing. It happens frequently, doesn't it? I'm not aware of any… You've never heard of anybody getting through successfully, getting through a Stokes interview? Only in the proposal, if it's Sandra Bullock. But in real life, I have not heard of such a thing. Because the Stokes interview is to determine if you've defrauded the government. It's not merely to determine whether you have a valid application for an adjustment of status. It's almost the equivalent of being charged with a crime, which is why we're saying it's a final agency action to put somebody's rights in jeopardy. No one would argue that… The couple could provide documentation that would address whatever concerns that they had that prompted the notice, right? They had already provided. No, I'm just saying in general, this whole idea that Stokes interviews, you can never get a denial automatically. The Stokes interview is to determine if you've lied and to actually put the burden back on the applicant to show that they're not lying, where there's a presumption that you're actually defrauding a federal office by filing improper and incorrect information. But then why don't they – but then if that what you're saying is correct, then the procedure would be, one would think, denied and now come in because we want to investigate whether you're lying. That's not what happens. What happens is more investigation is undertaken via the Stokes hearing. And if there is a denial, it comes later, doesn't it? Judge, I would argue that that's what Judge Bryant intended in the case that gives rise to the name Stokes hearing. I think in practice today in the immigration courts, what you just said makes a lot more sense because it's a civil proceeding to seek privileges. But even if it is the case that almost always the Stokes hearing is followed by a denial, it's then followed by a denial. What we're asked to do is to assess what is a final agency action. And a step that is by definition a stepping stone on the way to a final definition, a decision, is not a final agency action. Your Honor, just as in Stokes where Judge Bryant stated that we can't have this reviewed any further by immigration because they're inherently prejudiced and biased against the applicant, the same thing is true once they've sat down at Stokes hearing. They've already determined that the investigation has shifted to finding fault from putting the application forward. You want us to modify the law to allow people to sue under the APA when they have ongoing applications because of their belief that it's going to be a bad result at the end. That would be a quite extraordinary thing for this Court to say. Why not just tell people to wait for the decision itself? It may be, you're right, it's going to be a denial, but what's the harm in saying you have to actually get the denial and then you can sue? If I might just address that and then I don't want to go so far over the time. Your Honor, the Stokes decision was meant to provide additional rights to people. Our laws for immigrants provide them with rights, which is a unique thing and it's a salutary thing. He wanted it to be that that hearing would prevent abuse, not be an occasion for abuse. Somebody's application should be reviewed, and then if there's a criminal element, refer to the U.S. Attorney's Office or other prosecutor. The criminal part should not be put into the middle of what is just a civil application to get an adjustment of status. I think that the use of it improperly and the fact that it exists at all is a problem going off of Stokes and the spirit of that case. Why is it an abuse for the agency to say, and I'm going to have some questions for the government about why they would do it in this case, but why would it be an abuse inherently for the government to say, we're suspicious of this, we don't think this is, we're not persuaded yet, and then they come in and they ask people, they interview people separately and they ask them all these toothbrush questions or whatever. I guess they don't ask that anymore because everybody knows to be prepared for that one. They go through these questions to try to see whether it sounds like people are really living together, etc. Why is that in itself an abuse? They had already done that in the investigative interview. What I'm saying is it would be the same thing as if Mr. Wolf – Did they have a separate interview of each? They had an interview where they went through everything you just said. The Stokes interview is to actually interrogate them and prove they committed a crime. And prove they committed a crime because the USCIS determines whether they've committed a crime? That's the purpose of the Stokes hearing is to investigate them. That's why it says you are allowed to bring an attorney, keep recorded. Your Fourth and Fifth Amendment rights are brought into question in that Stokes interview in a way that they're not in the original investigative procedure. The holding of this court would be any time someone gets a Stokes interview notice, they could immediately sue for denial. That's what you're asking us to do. Every time any person who gets a Stokes interview notice could sue under the APA at that moment. Correct or not? Well, it only happens once every several years, Judge, but I think that the process itself should be condemned of having a Stokes hearing before the application is ruled on. I believe the court, in looking back at the Stokes case, would want to do that to separate the civil and these criminal elements and prevent the opportunity for abuse by people who – Even if the Stokes hearing only happens once in a while, there are many other, I assume, interim actions that the immigration authorities take during these various application processes that could be – the same argument could be made that you're making about the Stokes hearing. Any interim investigative step could then be reviewed under the APA. I don't think – Well, Judge, I'm not going that far. I'm just saying – I know you're not going that far, but we have to worry about the next case. Yeah, and I can address that briefly, and I'll retouch on it on rebuttal, which is 5 U.S.C. Section 704 looks – If you read the statutory language, I won't read it out on the record right now. It looks at interlocutory decisions and things that are happening in the interim. I'm not suggesting that the path be broadened and the way be made wider to allow for that. I'm saying that in this particular instance, where an immigration attorney is targeted, prejudiced, and biased, set down for a hearing on a criminal accusation, that should be condemned and the use of the Stokes hearing for that purpose should be condemned. Then the immigration group will take that hearing out, and they will refer cases to prosecutors when they're trying to say that somebody's lied to the government, not use it as a cudgel. So you're saying they shouldn't have Stokes hearings. I absolutely am, Your Honor. Yeah, I think you're essentially just saying there shouldn't be Stokes hearings at this point. But let's hear from the government. You have two minutes for rebuttal. Thank you. Mr. Stein. Thank you, Your Honor. This may please the court. My name is Elon Stein. I'm an assistant U.S. attorney for the Southern District of New York. Did you represent the government in the district court? I did, Your Honor. This appeal raises two issues. First, did plaintiffs exhaust their administrative remedies as required under the Federal Tort Claims Act with respect to their tort claim? Second, with respect to the APA claim, did they adequately allege a final agency action? The answer to both questions is no, as the magistrate judge and the district judge correctly concluded. We ask for that reason that you affirm the district court's judgment. I'll first address the tort claim and then turn to the APA claim. The FTCA requires plaintiffs to exhaust administrative remedies before filing suit in court. They have to do that by presenting a claim to the agency for money damages in a sum certain and to wait for a final denial of the claim. Plaintiffs didn't do that. They filed their suit in federal court on February 28, 2020. They filed their administrative tort claim on March 6, 2020. Well, even if they say it was the February 13th one, but it's still only two weeks. They filed the lawsuit two weeks after that claim. Correct. Correct. So there's a couple of reasons why the February 13th email is not an administrative tort claim. The first, and I think the most important, is that there's no claim for money damages at all. Never mind the sum certain requirement. Nowhere in the two-and-a-half-page email do they say, as a remedy, we're demanding payment. They do. There's one line. The redress line. Redress and a remedy. That, I don't think, can reasonably be read to be a claim for money damages specifically. In any case, there is a requirement that there be a sum certain, and that is certainly not in the email. But even if the February 13th email were an administrative claim, that claim was never denied. I mean, the idea that the issuance of a scheduling notice on February 14th is a denial of a tort claim, to me, seems unreasonable. Is there any reason they could not file that claim tomorrow? At this point, they put in the form. It had a sum certain. Obviously six months have gone by. Is there any reason why they couldn't file that claim tomorrow? No reason. All right. As the court knows, the district court dismissed the claim without prejudice. And so, of course, they could file tomorrow. All right. Do you want to address the APA claim? Yes. As the court is aware, the APA requires agency actions to be final before they are reviewable in court. To be final, an agency action has to be the consummation of the agency's decision-making process and determine rights and obligations and have legal consequences. Neither condition is met here. The decision that the agency made was to continue its investigation. It had an initial interview. And what it did was schedule a second interview because the first interview was insufficient, was inconclusive. Do you happen to have any information about how often a Stokes hearing, a Stokes interview is scheduled for a couple that shows up with a baby? I don't, Your Honor. I don't. I would guess that's not common. I mean, if we're talking about is this a bona fide marriage, I suppose if somebody suspects that it's not their baby, that they just brought a random baby to the interview, that might be a situation. But this does not seem to be one of the – I don't know if your adversary's figures are literally correct, but it is a very small minority of cases that proceed to the Stokes interview. Your Honor, I'm not sure about those figures. I'm not either, and I don't know if there's anything in the record about the exact things. But this is not the everyday application, right? Sir, I don't know, and there's nothing in the record about this to determine this. Nevertheless – so plaintiffs may have an APA claim at the end of the day. They may. The issue is – It is. My understanding is that Mr. Manchanda filed an appeal with the Board of Immigration Appeals and that that remains pending. And so the Stokes interview has – Well, wait. Has the application been denied? No. No, he filed some other kind of proceeding. He's challenging the scheduling of the Stokes interview. Okay, so he's not – they have not proceeded with the Stokes interview and the application could still be granted at any point. Correct. There was some statement in Mr. Manchanda's brief, I thought, and I may have misread it, suggesting that he was told that the official who had conducted the initial hearing had been disciplined in some way. So that is not in the complaint. I don't see that anywhere in the record, and I don't have any information that would suggest that that is true. No one from the U.S. Attorney's Office thought to ask whether this is, in fact, something that is the case? Early on in the case – He does – in an amended complaint, this is in Appendix 19, upon information the UCIS investigated the claim and it is understood from a DHS civil rights officer, Ms. Keels, that the investigators found against defendant ISO Lewis and were taking action against her. So it is in the complaint, right? That is – I'm sorry, I thought Judge Lynch was referring to a statement that the United States had apologized to Ms. – No, I'm saying that apologies, just that there was a statement that the person, the defendant, I don't know if it was Ms. Lewis or Ms. Quintana, I forget which one, had been in some way disciplined or that there was some finding against that person. Your Honor, I know that in my conversations with agency officials, there was an outright denial that any of these allegations are true. I did not specifically ask whether someone had been disciplined. But in any event, that wouldn't be a final action either. We're taking action against her. It doesn't even say what that action is. It doesn't say that that's in full resolution of his claim for money damages. That's far from – You know, I don't know, maybe the agency would take the position that you can't sort of disqualify somebody because they've been sued from proceeding with adjudicating this application. On the other hand, they might also take the position that whether or not these allegations have any basis in the fact that it would be better to have the case reassigned to some other officer. And, you know, we're probably long past any of this in terms of Mr. Manchanda's crusade here. But, you know, I'm just wondering if, as far as the APA is concerned, the Federal Tort Claims Act thing, I suppose, to the extent they think there's a tort here, they have now made a presentment and they could file a suit. In terms of the APA, if what they're really interested in is getting this application processed, it would be surprising to me if the agency and a reasonable plaintiff could not find a way to proceed and review, not in the context of this action, but just in terms of their own internal process, whether they want to rethink the Stokes interview or whether they're committed to doing that. And if they are, so be it. That's their privilege. But anyway, that's – I was just curious as to what the agency's position was with respect to the ongoing application. But I guess you've answered it to the best of your ability. I have, Your Honor. And I would just point out that Mr. Manchanda could, once there is a final decision, could apply and request that it be reopened by USCIS. If the final decision is against him, I assume that is something that is subject to some kind of review, whether it's under the APA or under some other provision. There would either be a specific statute allowing that to be reviewed and maybe saying it to a district court or whatever, or there would be an APA action. There would be something. Right. It could be reviewed by USCIS. I'm not assuming it's necessarily going to be denied. Not either, Your Honor. But it could be reviewed by the agency. Mr. Manchanda could also ask that it be – basically renew the application before an immigration judge and appeal if that gets denied, appeal that to the BIA. Your Honors, we think it's clear that this is an intermediate decision simply to continue investigating. And if there is no final agency action, I see that my time is up. Thank you, Mr. Stein. Thank you, Your Honors. Okay, Mr. Fazio, you have two minutes. Before you start, I want to just follow up on Judge Lynch's point. Would your client on the APA portion of the case, would he be satisfied if – would they be satisfied if it went to a different officer for purposes of a type of Stokes hearing? Because you're appealing – that's being appealed to the board, right? Right now? Is that what's going on? I'm not exactly sure what he's doing. He's making a number of different challenges. But just to be clear, what we're discussing outside of these proceedings is that my client would like the Stokes interview to be withdrawn. Right. And he would like the application to be granted. And he is claiming monetary damages under his tort claim and APA claim, but that's not really the point of this. The point is, is that just as a criminal defendant would be under the threat of prosecution and incarceration, my client is under the threat that he's being called a liar in his field of practice and that his family can be torn apart. Now, if he waits until they make a final decision and they decide that it's not a valid marriage, I can't imagine that. But if that were to happen, his wife, who is from Poland, and his son, who has been staying with him for much of the time when she's not back home with her family, would not be able to be here until those proceedings were concluded unless he was able to get a stay. This is true of every case in which an application of this kind is denied. That's true, Judge. And if you look at— And everybody goes through that process and then they challenge it. And usually they don't find themselves on a plane out of the country the next day. They continue to proceed through the litigation, challenging the action of the agency. That's how it's done. As Mr. Menchanda knows, because he does it for a living. I agree with you. And we cite it to cases in this circuit and others where there's no statutory requirement that they actually go through the final process once they are denied. They can go to court and seek a review of the agency action at that point instead. But in both cases, they have to go before the immigration court or this court and get a stay, which, as Your Honors know, you're sitting in one of the highest appeals courts in the country. It's not always a foregone conclusion, even on a case where somebody would be deported. And to put somebody in threat of having their family ripped apart in that way under false allegations, that's why we have— There is a legal consequence, obviously, to being accused of lying to a federal agency. And among other things, there's redress in the form of malicious prosecution if you're falsely accused of a crime. Why wouldn't the same be true here, that he has the ability to step in and say, I've been harmed. I need redress because there's been a misuse. There's an abuse of the process, and I didn't get a fair— I guess he can appeal that, and that's coming before the board, and they'll decide that or not. But my point is it's slowing down the process. I understand, obviously, that they would like this to move forward, so that's— But Your Honor, isn't it the case that being charged with a crime puts you in jeopardy and gives rise to legal consequences? Well, I understand that. I'm not questioning the wisdom. I'm just – I was just trying to figure out what his position was in terms of willingness to proceed if it was a different officer. But I'm not surprised by your answer. Well, he would like, obviously, to have a different officer. We'd also like to try to settle the whole matter, and we just haven't been able to do so before this hearing came up. But I do think— Could I ask a different level of question, really? I take it that in your review of this case, you have read your client's brief in opposition to the motion to dismiss. Yes. On the subject of abusive allegations, that's a rather extraordinary document. Would you agree? Your Honor, I understand what you're saying, and I would tend to agree with you, and that's a different matter. But I don't think the fact that perhaps my client sometimes is a little bit more incendiary than most and may voice some allegations of his own means that he's not a good immigration attorney or that he should be abused. Oh, no, of course not. Of course not. But it does raise a question of whether there is anything—maybe it's just not our business. It was a document filed in the district court. It's not something that was filed here. But I just wondered whether there's any basis for finding this a disciplinable offense on the part of an attorney to, in the course of a perfectly ordinary legal argument about whether a complaint states a claim for relief, to engage in this sort of racist abuse of dozens of judicial officers in the state and federal courts. I think it's extremely unfortunate that that's the case and that what we're here today talking about is there shouldn't be ad hominem or personal attacks against an individual who's seeking to have something that they're not entitled to as a right granted to them. And the fact that there's some question or there's been some allegations that my client's done similar things— No, I just would hope that— —is unfortunate. You know, you as his attorney might be engaged in some counseling with him as to whether this is appropriate behavior. I'm glad you're the one who's doing the argument here. I appreciate it, Your Honors. And I've had those conversations with my client. I'm not breaking privilege here. Yeah, I understand. And there's other stuff— I certainly am not. I agree with you that it does not bear, one way or the other, on the merits of your appeal and the issues that you've presented. All right. Thank you, Mr. Fazio. Thank you, Mr. Stein. We'll reserve the decision. Have a good day.